STATE of Wisconsin, Plaintiff-Respondent,

v.

Fred V. VOGELSBERG, Defendant-Appellant.†

Court of Appeals

*No. 2005AP1293–CR. Submitted on briefs February 6, 2006.
—Decided October 26, 2006.*

2006 WI App 228

(Also reported in 724 N.W.2d 649.)

† Petition to review denied 1/9/07.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Tim Provis*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Deininger, JJ.

¶ 1. DYKMAN, J. Fred Vogelsberg appeals from a judgment of conviction for first-degree sexual assault of

a child, contrary to Wis. Stat. § 948.02(1) (2003–04).[1] Vogelsberg contends that his state and federal rights to face his accuser were violated when the victim testified from behind a screen at trial. We disagree and affirm.

## Background

¶ 2. A jury convicted Fred Vogelsberg of first-degree sexual assault of his four-year-old grandson. Before trial, the State made a motion to permit the victim to testify at trial via closed-circuit television to minimize the potential for trauma to the child. The court took testimony on the motion from the child's stepmother and his counselor. It also considered a police report indicating that Vogelsberg had threatened to harm the child if he ever told anyone about the abuse, and determined that the child would likely be further traumatized by having to face his abuser at trial. Over Vogelsberg's objections, the court ordered that the victim be allowed to testify from behind a screen to shield him from visual contact with Vogelsberg. Vogelsberg appeals.

## Standard of Review

■■■

¶ 3. Whether an action by the circuit court violated a criminal defendant's right to confront an adverse witness is a question of constitutional fact. *State v. Barton*, 2006 WI App 18, ¶ 7, 289 Wis. 2d 206, 709 N.W.2d 93. "In reviewing questions of constitutional fact, we uphold a circuit court's factual findings unless clearly erroneous, but we independently determine

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

whether those facts meet the constitutional standard."
*State v. Knapp*, 2005 WI 127, ¶ 19, 285 Wis. 2d 86, 700
N.W.2d 899 (citation omitted).

### *Discussion*

██

¶ 4. The Confrontation Clause of the Sixth
Amendment to the U.S. Constitution provides: "In all
criminal prosecutions, the accused shall enjoy the
right . . . to be confronted with the witnesses against
him . . . ." This right applies to state prosecutions by
incorporation through the Fourteenth Amendment.
*Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Wisconsin
Constitution similarly provides that "[i]n all criminal
prosecutions the accused shall enjoy the right . . . to meet
the witnesses face to face . . . ." WIS. CONST. art. I, § 7.
Despite the state constitution's more direct guarantee to
defendants of the right to "meet" their accusers "face to
face," the Wisconsin Supreme Court has generally inter-
preted the state and federal rights of confrontation to be
coextensive. *See, e.g., State v. Thomas*, 144 Wis. 2d 876,
887, 425 N.W.2d 641 (1988) (*Thomas I*); *State v. Burns*,
112 Wis. 2d 131, 144, 332 N.W.2d 757 (1983).

¶ 5. Vogelsberg's primary contention is that the
U.S. Supreme Court's decision in *Crawford v. Washing-
ton*, 541 U.S. 36 (2004), represents a shift in
confrontation-clause jurisprudence that overturns state
and federal precedents permitting a witness to testify
from behind a barrier upon a particularized showing of
necessity. We will start by examining the leading state
and federal pre-*Crawford* cases, then turn to *Crawford*
and subsequent cases to determine *Crawford's* impact.

¶ 6. In *Thomas I*, 144 Wis. 2d at 880–81, the Wis-
consin Supreme Court addressed the question of
whether placing a screen between a child victim and a

defendant violated the defendant's right to confront his accusers. The *Thomas I* court affirmed a first-degree child sexual assault conviction in which Thomas asserted his right to confrontation was violated by the placement of a screen between himself and his eight-year-old victim at the child's deposition. *Id.* Citing *Virgil v. State*, 84 Wis. 2d 166, 186, 267 N.W.2d 852 (1978), the court stated that "the cornerstone of the right of confrontation is not . . . eyeball-to-eyeball presentment [of the witness] to the defendant" but the opportunity for "meaningful cross-examination of the witness." *Thomas I*, 144 Wis. 2d at 893.

¶ 7. The *Thomas I* court held that "[w]hile face-to-face confrontation is preferable at trial, this preference may yield to other competing interests where, as here, the circuit court determines that ordinary court room procedures may aggravate the trauma of the child-witness." *Id.* at 881. *Thomas I* instructed trial courts to employ, as an exercise of their discretion, a "balancing formula" to determine "on a case-by-case basis" whether "the protection of the child through the placement of a physical barrier between the child and the accused . . . outweigh[s] the preference for face-to-face confrontation." *Id.* at 893.

¶ 8. One day after the release of *Thomas I*, the U.S. Supreme Court decided *Coy v. Iowa*, 487 U.S. 1012 (1988), a challenge to an Iowa statute authorizing trial courts to place a screen between child victims and the accused at trial. In *Coy*, the trial court relied upon the statute and did not make particularized findings that Coy's two accusers were likely to be traumatized by having to face Coy in court. In a six-to-two decision[2]

---

[2] Justice Blackmun dissented, and was joined by Chief Justice Rehnquist. Justice Kennedy did not participate.

authored by Justice Scalia, the court affirmed its commitment to the literal right of defendants to confront their accusers. *Coy*, 487 U.S. at 1016–17 ("We have never doubted . . . that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact."). The court struck down the Iowa statute because it "create[d] a legislatively imposed presumption of trauma." *Id.* at 1021. However, the court "le[ft] for another day . . . the question whether any exceptions exist" to the criminal defendant's right to confront his accuser face-to-face. *Id.* Whatever exceptions there may be, the court stated that "they would surely be allowed only when necessary to further an important public policy," and by a court's particularized findings that a witness required special protection. *Id.*

¶ 9. In light of *Coy*, the Wisconsin Supreme Court granted a motion by the defendant in *Thomas I* to reconsider its decision in his case. The court subsequently concluded in *State v. Thomas*, 150 Wis. 2d 374, 394, 442 N.W.2d 10 (1989) (*Thomas II*), that *Thomas I* was correctly decided and that there was "no need to modify any of the language of *Thomas [I]*." Nonetheless, *Thomas II* offered several pages of "explanatory comments" discussing the impact of *Coy. Id.* at 376. The *Thomas II* court concluded that:

> While the sweep of the *Coy* case is problematic, we can, with confidence, conclude that, although generalized legislative policy will not justify special procedures to protect a child witness from trauma, exceptions may be recognized when there are case-specific and witness-specific findings of necessity. Nevertheless, the "majority" opinion of Justice Scalia left for "another day" the question of whether any exceptions to "face-to-face" confrontation exist.

While the Supreme Court, in the absence of findings justifying an exception, struck down the particular procedure utilized under the aegis of the Iowa statute, we conclude that it did not necessarily rule out that procedure or other procedures intended to implement the same public policy. Indeed, when the opinions of Justices O'Connor, White, Blackmun, and Rehnquist are coupled with the open-ended language of Justice Scalia in reference to particularized findings in particular cases, *Coy* appears to give a reasonably clear imprimatur to the utilization of unusual procedures when found to be necessary to protect child witnesses from the trauma of usual courtroom testimony.

*Id.* at 380–81 (citations and footnotes omitted). Applying this interpretation of *Coy* to Thomas's case, the supreme court concluded that the trial court made specific findings of fact that "without the special procedures" used in that case, "further traumatization of a vulnerable child witness would likely result." *Id.* at 388. The court further concluded that these findings supported the trial court's exercise of its discretion to place a screen between the witness and the accused. *Id.* at 389–90.

¶ 10. The *Thomas II* court's view of how the U.S. Supreme Court would decide a confrontation clause challenge in which the trial court's action was supported by case-specific findings was prescient. In *Maryland v. Craig*, 497 U.S. 836, 855 (1990), the court decided the issue it had "le[ft] for another day" in *Coy*, concluding that

if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial

against a defendant in the absence of face-to-face confrontation with the defendant.

Before authorizing the use of a barrier between the child witness and the accused, a trial court must find: (1) the use of the procedure is "necessary to protect the welfare of the particular child witness who seeks to testify"; (2) "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant"; and (3) "the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis,* i.e., more than 'mere nervousness or excitement or some reluctance to testify.' " *Id.* at 855–56 (citations omitted).

¶ 11. Justice Scalia dissented in *Craig,* stating that the "purpose of enshrining [the right to face-to-face confrontation] in the Constitution was to assure that none of the many policy interests [that arise] from time to time . . . could overcome a defendant's right to face his or her accusers in court." *Id.* at 861 (Scalia, J., dissenting). He concluded: "For good or bad, the Sixth Amendment requires confrontation, and we are not at liberty to ignore it." *Id.* at 870 (Scalia, J., dissenting).

¶ 12. In *Crawford,* 541 U.S. 36 (2004), Justice Scalia applied this strict view of the Confrontation Clause to a case involving an out-of-court testimonial statement. There, the court considered whether the admission of a recorded statement by Crawford's wife against him violated the Confrontation Clause when his wife did not testify at trial because of marital privilege. *Id.* at 40. Applying *Ohio v. Roberts,* 448 U.S. 56, 66 (1980), which held out-of-court testimonial evidence to be admissible upon a judicial determination that the evidence bore "adequate indicia of reliability," the trial court admitted the recorded statement on the ground

that it showed "particularized guarantees of trustworthiness." *Id.* In an opinion joined by seven justices,[3] *Crawford* overruled *Roberts* as to testimonial evidence, holding that the only indicium of reliability sufficient to meet the requirements of the Confrontation Clause for testimonial evidence is face-to-face confrontation. *Id.* at 68–69. Thus, *Crawford* concluded that out-of-court testimonial evidence is admissible under the Confrontation Clause only when the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Id.* at 59.

¶ 13. Vogelsberg cites language from *Crawford* that would appear to call into question the continued validity of *Craig*. Vogelsberg notes that *Crawford* criticized the balancing of interests approach used in *Craig*: "By replacing categorical constitutional guarantees with open-ended balancing tests, we do violence to their design." *Id.* at 67–68. *Crawford* also contains other passages that suggest that *Craig's* days may be ripe for review: "The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts. Rather, the [text of the Confrontation Clause] is most naturally read as a reference to the right of confrontation at common law . . . ." *Id.* at 54; *see also id.* at 60 ("Although the results of our decisions have generally been faithful to the original meaning of the Confrontation Clause, the same cannot be said of our rationales."). Despite these statements in *Crawford*, we disagree with Vogelsberg's assertion that *Crawford* overrules *Craig* and *Thomas I* and *II.*

---

[3] Justices Rehnquist and O'Connor concurred in the result, though criticizing the majority's distinction between testimonial and non-testimonial evidence.

¶ 14. Had the Supreme Court intended to overrule *Craig*, it would have done so explicitly. The majority opinion in *Crawford* does not discuss *Craig* or even mention it in passing. The only precedent that *Crawford* overruled was *Roberts*, and then, only with respect to testimonial statements. *See State v. Manuel*, 2005 WI 75, ¶ 60, 281 Wis. 2d 554, 697 N.W.2d 811.

¶ 15. We conclude that *Crawford* and *Craig* address distinct confrontation questions. *Crawford* concerns the admissibility of out-of-court "testimonial evidence" where the witness was not available for cross-examination. The fundamental issue in *Crawford* was the reliability of testimony. The Court concluded that the Constitution does not permit judicial determinations of reliability concerning out-of-court testimony; except for traditional common law exceptions, only confrontation at trial is sufficient to satisfy the Sixth Amendment. The issue in *Craig*, and in this case, is not the reliability of testimony—in both *Craig* and here, the accused had the opportunity to cross-examine the witness. Rather, the issue is whether the demands of the Confrontation Clause are met when, for public policy reasons and following a case-specific determination of necessity, a barrier is placed between the witness and the accused. *Craig* addressed this question, and *Crawford* did not.

¶ 16. Finally, we note that one commentator has opined that, in *Crawford*'s wake, "the rule of [*Craig*] is presumably preserved" because "*Crawford* addresses the question of *when* confrontation is required; *Craig* addresses the question of *what* procedures confrontation requires. The two cases can coexist peacefully, and nothing in *Crawford* suggests that *Craig* is placed in doubt." Richard D. Friedman, *Adjusting to Crawford: High Court Decision Restores Confrontation Clause*

*Protection,* 19 CRIM. JUST. 4, 8 (2004); *see also* Rorry Kinnally, *A Bad Case of Indigestion: Internalizing Changes in the Right to Confrontation After Crawford v. Washington Both Nationally and in Wisconsin,* 89 MARQ. L. REV. 625 (2006).

¶ 17. We know of no state or federal court that has concluded that *Crawford* overrules *Craig.* However, at least two federal circuit courts have implicitly concluded that *Craig* remains good law post-*Crawford* by applying Craig's approach to resolve a confrontation clause dispute similar to that considered in *Craig. See United States v. Bordeaux,* 400 F.3d 548, 553–54 (8th Cir. 2005); *United States v. Yates,* 438 F.3d 1307, 1313–18 (11th Cir. 2006) (applying *Craig* to the question whether testimony via two-way video conference violated defendant's right to confront accused).

¶ 18. Alternatively, Vogelsberg contends that, if Craig remains viable, the trial court did not make the proper findings of necessity required by *Craig* that would justify the use of a barrier. He asserts that *Craig* authorizes procedures that shield a testifying child witness from contact with the accused only when the child's "trauma would impair the child's ability to communicate," *Craig,* 497 U.S. at 857, and that the trial court here failed to make such a finding. We disagree. Vogelsberg's view is based on one phrase in *Craig,* which he reads to the detriment of the case-specific, multi-factored test of necessity set forth in that decision.

¶ 19. In a concluding paragraph, the *Craig* court states:

> In sum, we conclude that where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant,

529

> *at least where such trauma would impair the child's
> ability to communicate,* the Confrontation Clause does
> not prohibit use of a procedure that, despite the ab-
> sence of face-to-face confrontation, ensures the reliabil-
> ity of the evidence by subjecting it to rigorous adver-
> sarial testing and thereby preserves the essence of
> effective confrontation.

*Craig,* 497 U.S. at 857 (emphasis added). Nowhere else
does *Craig* suggest that the focus of the necessity
inquiry should be on whether the trauma would impair
the child's ability to give testimony. In fact, a categorical
requirement that the child's trauma must be such that
he or she cannot speak would run counter to the
detailed, three-part test to determine the necessity of a
special procedure to shield the child witness from the
accused. Furthermore, we have applied *Craig* in the
past and have not read it to impose such a requirement.
*See, e.g., State v. Street,* 202 Wis. 2d 533, 552–54, 551
N.W.2d 830 (Ct. App. 1996).

██

¶ 20. Finally, Vogelsberg has not contended that
the court failed to make the three findings required by
*Craig* to show the necessity of the procedure used in
this case. Our independent review of the record shows
that the trial court made the required findings. After
discussing the testimony of the child's stepmother and
counselor, the court determined "some type of bar-
rier ... is necessary to protect [the child's] welfare
specifically." The court cited a police report indicating
that a social worker told police that Vogelsberg had
threatened to harm the child if he ever told anyone
about the abuse. The court found that the child "would
likely be traumatized by the defendant's presence when
he testifies for the same reason that the allegations of
sexual abuse, when coupled with this threat which has

been related by the child to the authorities, establishes that traumatization is likely." The court also determined that the child's trauma would be beyond mere nervousness "primarily because of the threat which has been coupled with disclosure." Based on these findings, we conclude that the trial court's use of a barrier between Vogelsberg and the child witness was appropriate and did not violate Vogelsberg's confrontation right.

*By the Court.*—Judgment affirmed.