SUTTON, Circuit Judge, concurring. CONCURRENCE I join Judge Keith’s thoughtful opinion in full. I write separately to note the pushing tendencies of one line of Confrontation Clause precedents and the pulling tendencies of another. Here is what the Confrontation Clause says: “In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” Maryland v. Craig asked whether this language permitted States to deny criminal defendants the right to confront child witnesses face to face when they provide testimony against them at trial via one-way closed-circuit television. 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). A 5—4 majority held that States could do just that when the “denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.” Id. at 850, 110 S.Ct. 3157. Fourteen years later, Crawford v. Washington asked whether a court could admit an unavailable witness’s statement, made without face-to-face confrontation or opportunity for cross-examination, if it had “adequate indicia of reliability.” 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). A 7-2 majority gave an unqualified no. It was not willing to “replac[e] categorical constitutional guarantees with open-ended balancing tests” based on “amorphous notions of ‘reliability.’ ” Id. at 61, 67-68,124 S.Ct. 1354. Crawford did not overturn Craig. And Craig governs us here, as junior courts may not overrule the handiwork of their superiors. But the two opinions would give Janus a run for his money. Consider how they treated another decision of the Court: Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Craig relied heavily, indeed almost entirely, on Roberts to justify its decision. 497 U.S. at 846-50, 110 S.Ct. 3157. But Crawford overruled Roberts with respect to testimonial statements. 541 U.S. at 60-69, 124 S.Ct. 1354. . Or consider how the two opinions characterized the Confrontation Clause guarantee. Craig treated the Clause as a safeguard for evidentiary reliability as measured by the judge in that case and today’s rules of evidence. See 497 U.S. at 849, 110 S.Ct. 3157. But Crawford held that it was a procedural guarantee that “commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination” in front of the accused. 541 U.S. at 61, 124 S.Ct. 1354. Or consider how the opinions treated a defendant’s right to face-to-face confrontation with the witnesses against him. Craig said that the “face-to-face confrontation requirement is not absolute.” 497 U.S. at 850, 110 S.Ct. 3157. But Crawford said that a face-to-face meeting between an accuser and the accused was an essential part of the confrontation right. 541 U.S. at 43-45, 124 S.Ct. 1354. “Dispensing with confrontation because testimony is obviously reliable,” Crawford observed, “is akin to dispensing with jury trial because a defendant is obviously guilty.” Id. at 62, 124 S.Ct. 1354. Or consider the methodology of each opinion. Craig looked to the “growing body of academic literature documenting the psychological trauma suffered by child abuse victims who must testify in court” to identify new exceptions to the right to face-to-face confrontation. 497 U.S. at 855, 110 S.Ct. 3157. But Crawford looked to the original publicly understood meaning of confrontation to determine when the exception-free words of the guarantee (“[i]n all criminal prosecutions”) should have exceptions. 541 U.S. at 42-50, 124 S.Ct. 1354. Or consider how each opinion describes the relationship of the Clause to the rules of evidence. Craig worried that adherence to the words of the guarantee was “too extreme” and would “abrogate virtually every hearsay exception” developed by the rules of evidence up to that point. 497 U.S. at 848, 110 S.Ct. 3157 (quoting Roberts, 448 U.S. at 63, 100 S.Ct. 2531). But Crawford refused to rely on “the law of evidence” at the time of the trial because it “would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices.” 541 U.S. at 51.124 S.Ct. 1354. Or consider each opinion’s view of exceptions to the guarantee. Craig offered no hint that there was any limit to the kinds of exceptions that the Roberts balancing test would allow then or in the future. But Cratvford carefully identified the kinds of exceptions that might be allowed under its approach and conspicuously never mentions Craig as one of them. See id. at 53-55.124 S.Ct. 1354. I am not the first person to acknowledge that the two decisions face in different directions. See, e.g., State v. Jackson, 216 N.C.App. 238, 717 S.E.2d 35, 39 (2011); Coronado v. State, 351 S.W.3d 315, 321 (Tex. Crim. App. 2011); United States v. Pack, 65 M.J. 381, 384 (C.A.A.F. 2007); David M. Wagner, The End of the ‘Virtually Constitutional,” 19 Regent U.L. Rev. 469 (2007); Marc C. McAllister, The Disguised Witness and Crawford’s Uneasy Tension with Craig, 58 Drake L. Rev. 481, 507-512 (2010); Children as Witnesses: A Symposium, 82 Ind. L.J. 909 (2007). In its brief in Crawford, the Solicitor General for the United States warned that the “categorical approach” sought by the criminal defendant in Crawford was “incompatible” with Craig. Brief for the United States as Amicus Curiae at 20-21, Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (No. 02-9410). Some intrepid courts have tried to reconcile Craig and Crawford. See, e.g., People v. Gonzales, 54 Cal.4th 1234, 144 Cal.Rptr.3d 757, 281 P.3d 834, 863 (2012); State v. Vogelsberg, 297 Wis.2d 519, 724 N.W.2d 649, 654 (App. 2006). I for one am not convinced by their efforts. To respect the one decision slights the other. This is not an idle matter, as the stakes of today’s case confirm. When courts hand out 2,880-month sentences for criminal convictions, all within the recommended range of the Sentencing Guidelines and all authorized by the relevant statutes, it’s fair to say that society deems the underlying conduct heinous. As well it should when it comes to the sexual abuse of a child. But just as the Bill of Rights protects speech we hate, it protects those suspected of conduct we despise, whether child abuse (as in Craig and here) or attempted murder (as in Crawford). Sex offenders have free-speech rights. See Packingham v. North Carolina, — U.S.—, 137 S.Ct. 1730, 198 L.Ed.2d 273 (2017). Arid suspected sex offenders, like all suspects of crime, are entitled to a slew of constitutional procedural protections, the right to confrontation among the foremost. Given the lengthy prison sentences that convicts in this area often face, the lifetime monitoring of their movements usually required after their release, and the stigma attached to their crimes, the marked contrast between the confrontation rights provided to most criminal suspects under Crawford and to sex-offender suspects under Craig deserves a justification. The right to confront a "witness usually is the chief protection against a false accusation. How can we guarantee the full effect of that protection when two lines of cases, both purportedly good law, dispute the nature and reach of the Clause that guarantees it? At a minimum, a few questions deserve consideration by the Court. How can Craig survive in the absence of the Roberts balancing test? Perhaps stare decisis should save Craig. The premise of stare decisis after all is that some wrongly decided decisions should stand in the interests of stability. But it is easy to imagine one class of criminal defendants wondering why stare decisis should save Craig but did not save Roberts. Maybe Craig could survive as an exception under the Crawford approach? Crawford noted that the Confrontation Clause is “most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding.” 541 U.S. at 54, 124 S.Ct. 1354. But at this point I am not aware of any historical exceptions rooted in the common law or fairly analogous to exceptions rooted in the common law that would support Craig. How essential is face-to-face confrontation under the Confrontation Clause? Craig acknowledged that it is important but could be balanced away. 497 U.S. at 856-57, 110 S.Ct. 3157. In his Craig dissent, Justice Scalia disagreed, noting that “whatever else it may mean,” “ ‘to confront’ plainly means to encounter face-to-face.” Id. at 864, 110 S.Ct. 3157. In Crawford, he reiterated the view he expressed in Craig. 541 U.S. at 42-45, 57-60, 124 S.Ct. 1354. “Virtual confrontation might be sufficient to protect virtual constitutional rights.” Order of the Supreme Court, 207 F.R.D. 89, 93 (2002) (Scalia, J.). But does it suffice “to protect real ones”? Id. The question deserves an answer. Even on Craig’s own terms (in truth, Roberts’ terms), did the Court correctly frame the balancing of interests? Craig permitted Maryland to balance the right of the child witness to avoid trauma against the right of the defendant to confront the witness. Is that the correct question? Requiring the prosecutor either to prove the allegation by confronted witnesses (or other evidence) or to drop the charge is just as plausible a way to think about it. Wouldn’t that approach benefit both the child, who often would not have to suffer the trauma of testimony, and the defendant, who would not lose an opportunity to confront an accuser face to face, which even Craig recognized as a right not lightly abandoned? See 497 U.S. at 850, 110 S.Ct. 8157. What does the current psychological literature say about the ordeal of reliving such horrifying events? And what kind of differences, incremental or otherwise, are there between reliving these experiences in front of the lawyers and court officials and social workers (as still required under Craig) as well as the assailants (as potentially required under Crawford)? Do the benefits of Craig still outweigh its costs according to today’s psychologists? What would be the practical impact of overriding Craig? A child’s testimony no doubt may facilitate efforts by the State to convict individuals of family violence and molestation. But it often is not the only evidence available. Look no further than this case for an example. The government points to Cox’s library of child pornography, the groin-height cameras he set up in the bathroom, a lewd video (involving Cox and a young child, and the trial testimony of older victims (then between the ages of 13 and 21) who were cross-examined in Cox’s presence. See R. 186 at 1019-30; R. 187 at 1085; R. 188 at 151. Yes, the prosecutors might not have obtained a 240-year sentence without Craig. But there was plenty of evidence to convict Cox of many crimes. No doubt, cases of sexual abuse and domestic violence may arise in which the child’s testimony is the primary, even the only, evidence available. But which way does that cut? Is the point of Craig to make it easier to convict suspects of certain crimes? To mark the defendant’s cards in advance through an unusual closed-circuit television used only when the victim testifies? The crucible of cross-examination, carried out in the company of the accused without the assistance of guilt-suggestive technology, still seems to be the best way to test whether a defendant should suffer decades in prison and a lifetime condemned as a sex offender based on witness testimony. Those accused of sexually abusing children, it’s fair to say, are not sympathetic defendants. But Crawford explained that the Framers drafted the Confrontation Clause to ensure that those accused of the worst crimes have the opportunity to prove their innocence through a specific, time-tested procedure. Craig is in tension with, if not in opposition to, that holding. And yet, both decisions stand. American judges and lawyers and citizens often take great pride in talking about the constitutional protections we accord individuals suspected of the most offensive crimes. I sometimes wonder if we mean it.