**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 18, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1497-CR**

Cir. Ct. No. 2019CF1393

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRIAN D. TRIPLETT,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed.*

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Brian D. Triplett appeals a judgment convicting him of armed robbery, as a party to a crime, first-degree recklessly endangering safety using a dangerous weapon, as a party to a crime, and felon in possession of a firearm, all as a repeater. On appeal, Triplett contends that the circuit court erroneously admitted the videotaped deposition testimony of two witnesses in lieu of live testimony. Triplett also contends that the evidence was insufficient to support the verdicts. For the reasons discussed below, we reject Triplett's arguments and affirm.

## DISCUSSION

¶2 On February 15, 2018, S.Y., a taxi driver, picked five people up from a hotel. After the taxi arrived at its destination, one of the male passengers, who was wearing red clothing, displayed a handgun and demanded that S.Y. exit the taxi. S.Y. did not believe that the firearm was real, so he remained in the taxi. The male discharged the firearm towards S.Y. The bullet struck the center of the front windshield and went down into the dashboard. S.Y. then exited the taxi, and upon the male's request, placed money on the pavement. A different male then walked around the taxi, picked up S.Y.'s money, and removed S.Y.'s wallet and cell phone from inside the taxi.

¶3 S.Y. identified Angela Gransberry and Dorian Gransberry in a photo lineup as being involved in the incident. Angela and Dorian both identified Triplett as the person with the gun. S.Y. was unable to identify Triplett in a photo lineup.

¶4 Triplett was charged with armed robbery, as a party to a crime, first-degree recklessly endangering safety using a dangerous weapon, as a party to a crime, and felon in possession of a firearm, all as a repeater.[1] Due to issues securing the presence of Angela and Dorian at trial, the case was dismissed without prejudice, and then re-filed with identical charges in the case number underlying this appeal.

¶5 After the case was re-filed, material arrest warrants were issued for Angela and Dorian. Eventually, both Angela and Dorian were arrested, and testified in videotaped depositions. *See* WIS. STAT. § 967.04(1) (2021-22).[2] Triplett was present at the depositions, and both Angela and Dorian were cross-examined by Triplett's attorney.

¶6 Angela testified that on February 15, 2018, she was at a hotel party with a number of people including Triplett. Angela left the party in a taxi, which was called by Triplett. After receiving change for the trip, Angela exited the taxi. Angela heard Triplett shout at S.Y. to "Get out." Angela saw Triplett point a handgun and there was a shot fired. After S.Y. exited the vehicle, Triplett ordered S.Y. to "give [Triplett] whatever he had." Dorian, Angela's brother, grabbed S.Y.'s wallet from the ground. After this, everyone took off running.

¶7 Angela saw her and Dorian's pictures on the news, and their mother took them to the police station to turn themselves in. At the police station, Angela

---

[1] Triplett was previously convicted of two counts of armed robbery, as a party to a crime, on January 26, 2015.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

identified Triplett in still pictures taken from the hotel surveillance video and a camera inside the taxi. She also identified Triplett in court. At the end of her deposition testimony, Angela was personally served with a subpoena for the trial on June 24, 2019, and the court ordered her to appear on that date.

¶8 Dorian also testified that on February 15, 2018, he attended a party at a hotel. Dorian, Angela, Triplett, and two others left the hotel in a taxi. Dorian testified that after he exited the taxi, he heard "a gunshot go off." He confirmed that he had told a detective in prior interviews that he saw Triplett with "the gun on [S.Y.] ordering him to drop the money," and that Triplett "fired a gunshot." He testified that Triplett told him to grab S.Y.'s wallet off the ground, which he did, and then he ran off. Dorian admitted that he initially lied about the incident to the police because he "didn't want no parts in anything that happened."

¶9 Dorian identified Triplett to the police, and in court. At the end of his testimony, the State personally served Dorian with a subpoena, and the court ordered him to appear on June 24, 2019 for trial.

¶10 On June 24, 2019, Angela did not appear for trial.[3] Due to the court's calendar, the trial was adjourned for a status conference on June 27, 2019.

¶11 At the next scheduled trial date on July 15, 2019, the State indicated that neither Angela nor Dorian were present. The State requested that Angela and Dorian be declared unavailable, so that their videotaped depositions could be used in lieu of live testimony at Triplett's jury trial. *See* WIS. STAT. § 967.04(5)(a)4. In

---

[3] Dorian also did not appear on June 24, 2019. Later, the State learned that Dorian was in custody on that date. Dorian, however, was released on July 2, 2019, prior to the next scheduled trial date.

support, the State detailed its efforts in securing Angela's and Dorian's presence, which included issuing subpoenas, seeking material warrants, and using law enforcement assistance to locate them.

¶12    The defense responded that the State "should keep trying."  The defense argued that Triplett had a right to confront the witnesses against him and Angela's and Dorian's "demeanor live and in person [was] crucial under the facts of this case."  The defense also stated that it had additional questions to ask Angela and Dorian based on their depositions.

¶13    The circuit court granted the State's request.[4]  The court found that Angela and Dorian were "unavailable."  The court adopted the State's factual assertions, stating that the assertions were "credible."  The court also noted that Triplett was afforded the right to cross-examine Angela and Dorian at the time of the depositions.  The court stated that it was balancing the unavailability of the witnesses with Triplett's speedy trial demand.

¶14    After the circuit court granted the State's request to use the deposition testimony, the case proceeded to trial.  During the trial, the State called S.Y.  The State also played the video surveillance footage from the hotel, and introduced photos from the camera inside S.Y.'s taxi.  In addition, the State played Angela's and Dorian's videotaped depositions.[5]

---

[4] The Honorable T. Christopher Dee addressed the State's request to use the videotaped deposition testimony during trial.  The Honorable Joseph R. Wall presided over the trial.  We refer to Judge Dee as the circuit court and Judge Wall as the trial court.

[5] The jury was provided with a transcript of each deposition to assist them with what was said on the videotapes.

5

¶15    After the State rested, the defense called three witnesses. Triplett's mother, Tamekia Richmond, testified that Triplett was residing with her in February and March of 2018. Richmond testified that she knew most of Triplett's friends, but did not know Angela or Dorian. She also testified that she did her children's laundry and Triplett did not own any red clothing.

¶16    Lieutenant Shelondia Tarver testified that she had recovered items taken from S.Y. at the home of Kianna Gransberry, the mother of Angela and Dorian. The items allegedly had been retrieved from a park.

¶17    The defense's final witness, Detective Jonathan Mejias Rivera, testified that the photo array shown to S.Y. included a photo of Triplett. After S.Y. reviewed that photo array, he said that, "I can't make an identification here." S.Y. told Detective Rivera that it would be easier to see the culprit in person as opposed to a photo.

¶18    The jury found Triplett guilty as charged. This appeal follows. Additional relevant facts will be referenced below.

## ARGUMENT

### I.    Admission of the Videotaped Deposition Testimony at Trial

¶19    On appeal, Triplett contends that the circuit court erroneously admitted the videotaped deposition testimony in lieu of live testimony. According to Triplett, the admission of the deposition testimony violated his right to confrontation.

¶20    The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall

enjoy the right … to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI; *see also*, WIS. CONST. art. I, § 7. At trial, testimonial statements of witnesses can be "admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004).[6]

¶21 In Wisconsin, a prospective witness's testimony may be taken by deposition if the witness is "unable to attend or prevented from attending a criminal trial or hearing," the witness's testimony is "material," and "it is necessary to take the … witness's deposition in order to prevent a failure of justice[.]" WIS. STAT. § 967.04(1). At a trial, a deposition is admissible if "[t]he party offering the deposition has been unable to procure the attendance of the witness by subpoena." Sec. 967.04(5)(a)4. "However, if the witness is not in fact unavailable or if the prosecutorial authorities have not made a good-faith effort to obtain [his or her] presence at trial, the use of the deposition does not fit within the exception to the confrontation requirement." *State v. Temby*, 108 Wis. 2d 521, 525, 322 N.W.2d 522 (Ct. App. 1982) (citation omitted).

¶22 "Whether an action by the circuit court violated a criminal defendant's right to confront an adverse witness is a question of constitutional fact." *State v. Vogelsberg*, 2006 WI App 228, ¶3, 297 Wis. 2d 519, 724 N.W.2d 649. We uphold the circuit court's findings of fact unless clearly erroneous, but

---

[6] We note that Triplett suggests that the depositions were "nontestimonial hearsay." This argument is conclusory and undeveloped. We generally do not address conclusory or undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Moreover, case law indicates that depositions are testimonial for confrontation purposes. *See Crawford v. Washington*, 541 U.S. 36, 51-52 (2004); *State v. Jensen*, 2021 WI 27, ¶21, 396 Wis. 2d 196, 957 N.W.2d 244.

"we independently determine whether those facts meet the constitutional standard." *Id.* (citation omitted).

¶23 Triplett contends that Dorian and Angela were not "unavailable." According to Triplett, "minimal efforts" were made by the State to secure their presence.

¶24 We disagree. Under the hearsay exceptions, a declarant is unavailable as a witness if the declarant "[i]s absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means." *See* WIS. STAT. § 908.04(1)(e).

¶25 In this case, prior to the start of the trial, the State detailed its efforts in securing Angela's and Dorian's presence, which included issuing subpoenas, seeking material arrest warrants, and using law enforcement to locate them. In particular, the State explained that on June 27, 2018, the case was set for trial under a different case number. At that time, Dorian was in custody, and Angela appeared in court. The trial did not start, and Angela was told to return the next day. Angela did not return, and a warrant was issued. The case was then set for trial on October 3, 2018. Dorian was released from custody and given a subpoena by his probation officer.

¶26 On October 3, 2018, neither Dorian nor Angela appeared. Dorian was subsequently arrested and appeared in court on November 19, 2018. The court admonished Dorian to return for trial. Dorian again failed to appear, and a body attachment was issued.

¶27 Between October 2018 and April 1, 2019, law enforcement made numerous attempts to locate Angela and Dorian at their last known address. On

April 1, 2019, the State requested an adjournment of the trial because it was unable to locate Dorian or Angela. The request was denied, and the case was dismissed without prejudice. The case was reissued, and the State immediately submitted an affidavit for material witness warrants. Eventually, Angela and Dorian were both arrested, and deposed. At the end of each of their depositions, they were subpoenaed and ordered to appear for trial on June 24, 2019. On June 24, 2019, Angela did not appear, and a material witness warrant was issued.[7]

¶28 On June 24, 2019, Dorian was in custody; however, on July 2, 2019, he was released on probation. Subsequently, Dorian's probation officer left him a subpoena on his bed at his transitional residence for the July 15, 2019 trial date. The State indicated that Dorian's failure to appear on July 15, 2019, meant one of two things—he was either an absconder from probation and he did not receive the subpoena or he was not willingly appearing in court.

¶29 Triplett did not contest the accuracy of the State's representations in the circuit court, nor does he now. The circuit court adopted the State's factual assertions, stating that the assertions were "credible," and found that Angela and Dorian were "unavailable."

¶30 Based on the State's explanations of its efforts on the record, we are not persuaded that the circuit court erred when it found that Angela and Dorian were "unavailable." The circuit court's factual findings establish that Dorian and Angela were "absent," and the State was "unable to procure [their] attendance by process or other reasonable means." *See* WIS. STAT. § 908.04(1)(e). As the State

---

[7] Angela also did not appear for two pending misdemeanor cases she had on June 25, 2019, and a warrant was issued in those cases.

pointed out in the circuit court, there is no requirement that the State "send out task force teams to scour the city[.]"

¶31     Thus, given that Angela and Dorian were "unavailable," and Triplett had a prior opportunity to cross-examine both of them at their videotaped depositions, we reject Triplett's argument that his confrontation rights were violated. *See Crawford*, 541 U.S. at 59. The circuit court properly admitted Angela's and Dorian's videotaped deposition testimony in lieu of live testimony.

## II.     Sufficiency of the Evidence

¶32     Triplett next contends that the evidence was insufficient to convict him.

¶33     When a defendant challenges the sufficiency of the evidence, we will not reverse a conviction "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). If there is a possibility that the jury "could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," we must uphold the verdict even if we believe that the jury "should not have found guilt based on the evidence before it." *Id.* at 507.

¶34     We first examine whether the State presented sufficient evidence to convict Triplett of armed robbery, as a party to a crime, and first-degree recklessly endangering safety using a dangerous weapon, as a party to a crime.

¶35     To convict a person of armed robbery, the State had to prove that the victim was the owner of property, the defendant took and carried away property

from either the person or presence of the victim with intent to steal, the defendant acted forcibly, and at the time of the taking and carrying away the property, the defendant used or threatened to use a dangerous weapon. *See* WIS JI—CRIMINAL 1480. In order to convict a person of first-degree recklessly endangering safety using a dangerous weapon, the State had to prove that the defendant endangered the safety of another by criminally reckless conduct under circumstances that showed utter disregard for human life while using a dangerous weapon.[8] *See* WIS JI—CRIMINAL 990, 1345. Additionally, because Triplett was charged as a party to a crime for the armed robbery count and the first-degree recklessly endangering count, the jury could find him guilty if it found he either directly committed the offenses or intentionally aided and abetted the person who directly committed the offenses. *See* WIS JI—CRIMINAL 400.

¶36 Here, there was no dispute that S.Y. picked up five people from a hotel, and after they reached their destination, a male wearing red clothing pulled out a firearm, ordered S.Y. to get out of the taxi, and fired a shot at the taxi that S.Y. was sitting in. In addition, it was undisputed that property was taken from S.Y. Rather, the sole issue at trial was the identity of the male with the firearm.

¶37 In regards to the identity of the male with the firearm, the jury viewed the videotaped depositions of Angela and Dorian. Both Angela and Dorian identified Triplett as the individual who possessed the gun. Their testimony was supported by the hotel video and the photos from inside the taxi. Thus, we conclude that the evidence was sufficient to support the jury's finding

---

[8] The Wisconsin Jury Instructions state that "criminally reckless conduct" is conduct that creates an "unreasonable and substantial risk of death or great bodily harm" and the defendant is aware that his or her conduct creates such a risk. *See* WIS JI—CRIMINAL 1345.

11

that Triplett was guilty of armed robbery, as a party to a crime, and first-degree recklessly endangering safety using a dangerous weapon, as a party to a crime. The credibility of the witnesses and the weight of the evidence rests with the jury. *See State v. Wilson*, 149 Wis. 2d 878, 894, 440 N.W.2d 534 (1989).

¶38 Likewise, there was sufficient evidence to prove that Triplett was guilty of felon in possession of a firearm. To prove felon in possession of a firearm, the State had to prove that the defendant possessed a firearm and was convicted of a felony prior to the date of the offense. *See* WIS JI—CRIMINAL 1343. The parties stipulated that Triplett was a convicted felon on February 15, 2018. Additionally, as stated above, Dorian and Angela both identified Triplett as possessing a gun.

¶39 Thus, we conclude that sufficient evidence was presented at trial from which a reasonable jury could find that Triplett committed armed robbery, as a party to a crime, first-degree recklessly endangering safety using a dangerous weapon, as a party to a crime, and possessed a firearm as a felon. *See Poellinger*, 153 Wis. 2d at 501.

## CONCLUSION

¶40 In sum, the circuit court did not err when it admitted the videotaped deposition testimony, and there was sufficient evidence to convict Triplett. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.